JOHN E. LANNING

*v.*

LUCRETIA F. PARKER et al.

[Submitted March 30th, 1915. Decided May 3d, 1915.]

1. Premiums paid for life insurance are, as against existing debts, voluntary gifts and conclusively fraudulent.

2. Premiums paid on life insurance policies, in fraud of creditors, may be recovered to the extent of those paid within the statutory period of limitation, *i. e.*, six years before the commencement of the suit. *York* v. *Flaherty, 210 Mass. 35*, criticised.

3. Loans made *to* assured upon the security of life insurance policies and deducted from the proceeds by the company, will not be set off against premiums paid in fraud of creditors in a suit brought to recover them.

4. In a suit to recover premiums paid in fraud of creditors, it is an immaterial issue where the insurance was contracted, or whence and under what laws the property was acquired, since the property—the proceeds of the insurance—is held by virtue of an enabling statute of this state.

5. Voluntary payments out of the proceeds of life insurance policies to creditors within the class protected by the statute, are entitled to be set off in a suit brought to recover premiums paid in fraud of creditors.

6. Dues paid for beneficial society insurance in fraud of creditors are not recoverable. But *quœre.*

7. A creditor who by his diligence discovers assets fraudulently concealed by his debtor, is entitled to priority of payment, and this is not lost by the form of his bill which lets in other creditors.

*Mr. Ruliff V. Lawrence,* for the complainant.

*Mr. Harry Truax,* for the defendants.

BACKES, V. C.

This is a creditor's bill to recover from the proceeds of life insurance policies premiums paid by the assured in fraud of creditors. The cause is before me on an agreed state of facts.

The complainant's debt of $1,875 was originally contracted in 1897, represented by a note, which has been kept alive by renewals. In 1904, and from time to time thereafter, Winfield S. B. Parker, the debtor, caused to be issued, by the New York Life Insurance Company, four policies on his life, payable at his death to his widow, the above-named defendant. He paid the premiums until he died, December 8th, 1913, amounting in all to $4,575, and with interest totals the sum of $5,871.26. The value of the policies at his death was $11,770. Upon their pledge, the assured in his lifetime borrowed from the insurance company, with interest, $2,636.42, which sum was deducted, and the net proceeds of $9,133.58 were paid to the defendant. Parker's estate has been declared insolvent by the orphans court. The claim of the complainant has been probated by the administrator, and his standing to maintain this suit is unimpeachable. *Haston* v. *Castner, 31 N. J. Eq. 697; Merchants' and Miners' Transportation Co.* v. *Borland, 53 N. J. Eq. 282.*

As the law stood prior to the statute of April 4th, 1896 (*P. L. 1896 p. 240*), now sections 38, 39 of the Insurance act of 1902 (*2 Comp. Stat. p. 2836*), all premiums on life insurance paid in fraud of creditors were assets for the payment of debts, and it was debatable grounds whether the proceeds of policies procured by such fraudulent payments were not also amenable.    *Merchants' and Miners' Transportation Co.* v. *Borland, supra.*    But the legislature at its next session, after the deliverance of Vice-Chancellor Pitney's opinion in the last-named case, and, undoubtedly, influenced by his exploitations of the unsettled condition of the law, and the conflicting and irreconcilable views entertained upon the subject by the judiciary generally, intervened and declared a policy with reference to the rights of creditors as against their debtors in respect to this sort of property, as follows:

"38. When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; and the person to whom a policy of life insurance is made payable may maintain an action thereon in his own name; provided, that, subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors. *P. L. 1902 p. 422.*

"39. Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband, or by any other person, shall inure to her separate use and benefit, and to that of her children, according to the terms and provisions of the policy or assignment, subject to the above provisions relating to premiums paid in fraud of creditors." *P. L. 1902 p. 422.*

The prototype of this enactment is to be found in the insurance laws of the State of Massachusetts (statutes 1894, chapter 522, section 73), in which commonwealth the model has

been under review, and where it received judicial sanction and construction. In *Bailey* v. *Wood, 202 Mass. 549*, Mr. Justice Morton, in discussing the act, says (at *p. 551*) :

"Whether the statute, as we construe it, is a good statute or a bad statute in respect to the opportunities which, as the plaintiff contends, it offers for fraud is a matter for legislative consideration. Since 1844, with the exception of the seven years from 1887 to 1894, if they can be called an exception, it has been the policy of the commonwealth to enable the husband and father to provide by insurance on his life for his wife and children, subject only to have premiums paid in fraud of creditors within the statutory period of limitation inure to their benefit out of the proceeds of the insurance, and since 1894 the law has included assignments from the husband to the wife of policies issued to the husband. This has been regarded as a wise and humane policy, and the constitutionality of the legislation has never been questioned, and we do not see how it can be successfully. 'It proceeds,' as has been said, 'upon the theory that the interest of a man's wife and children in his life, and his duty to make reasonable provision for their support, are not wholly subordinate to the claims of his creditors; and that he may make an irrevocable settlement of a policy of insurance on his life for the benefit of his family.' *Gould* v. *Emerson, 99 Mass. 154*. See, also, *Central Bank of Washington* v. *Hume, 128 U. S. 195*. The interests of creditors are protected by the provision that subject to the statute of limitations premiums paid in fraud of their rights shall inure to their benefit from the proceeds of the policy. They were similarly protected in the beginning. See statute 1844, chapter 82. Strictly speaking, only to the extent to which funds have been withdrawn from his estate by the debtor for the payment of premiums, can it be said that the insurance on his life has operated to the prejudice of his creditors. His life constitutes no part of the assets of his estate, and nothing therefore is taken from his creditors by an insurance upon it in favor of his wife or the assignment to her of a policy of insurance already issued, though it may be true, as contended by the plaintiff, that, except for the statutory exemption in her favor, the policy, like any other contract entered into by him and inuring to his bene-

fit, would constitute or could be found to constitute a part of the assets of her husband's estate."

That all of the payments of premiums in the case before us were made after the complainant's debt was incurred, and, as such, were voluntary gifts, and conclusively fraudulent, is not controverted. *Haston* v. *Castner, supra.* The sum total is far in excess of the complainant's claim, and if it could be appropriated, this case would be at an end. But, the defendant contends that by the express terms of the statute no more can be applied of the premiums, with interest, than was fraudulently diverted within six years next before the commencement of this suit. In the changed condition of the law, the rights of the contending parties rest exclusively upon the statute, and that upon which the complainant founds his demand is contained in the proviso that

"subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy ;"

by which enactment it will be observed that creditors former equities in funds created by the premiums are transformed into a strictly statutory claim and lien upon the proceeds of policies in the hands of the beneficiary, or, upon notice, in the hands of the insurance companies. So, therefore, the matter in issue involves an interpretation of the proviso, and the significance to be attached to the words "subject to statute of limitation." The complainant argues that it should be held to mean only to bar a recovery six years after the cause of action accrued, *i. e.,* the death of the assured, if the statute were pleaded, and in this he is supported by the supreme court of Massachusetts in the case of *York* v. *Flaherty, 210 Mass. 35.* That case was similar to the one under consideration. There the master ruled that the liability was for premiums paid within six years before the bringing of the suit. The plaintiff, on appeal, insisted that his cause of action did not accrue until the death of the insured, and included the premiums paid within six years before that event— the six years covering all of the premiums which were found to have been paid in fraud of creditors. In this he was sustained,

28

Mr. Justice Sheldon writing the opinion of the court, holding that—

"These premiums, by the terms of the statute, are to inure to the benefit of the creditors 'from the proceeds of the policy,' and in no other way. The right to recover their amount cannot accrue until the maturity of the policy, which was to be upon Mr. Flaherty's death. The stipulation for surrender values does not affect this, for that was conditional upon a surrender by the beneficiary, which never was made or required to be made. *Blinn* v. *Dame, 207 Mass. 159; Wilde* v. *Wilde, 209 Mass. 205.* But the statute of limitations begins to run only after the cause of action has accrued. *R. L. ch. 202.* Accordingly, it has been held in Alabama, that a cause of action like this arises and becomes fixed upon the death of the person insured. *Lehman* v. *Gunn, 124 Ala. 213.* No action could have been maintained by a creditor of Mr. Flaherty at the time of the payment of any premium, either against the company (*Central Bank of Washington* v. *Hume, 128 U. S. 195*) or anyone else, for there could be then no proceeds of the policy. There is nothing to the contrary of this in *Troy* v. *Sargent, 132 Mass. 408.*"

I cannot reconcile my judgment to the argument by which the conclusion is reached. No criticism can be made of the abstract proposition of law, but I cannot assent to their application. True it is that the right of creditors to recover the premiums does not arise until the death of the assured, but, it does not follow as a legal sequence, that the statute of limitations does not begin to run until the cause of action accrued, when, by the very act which defines the right, it is provided that upon the inchoate obligation of the beneficiary to account for the premiums, galvanized by the act into a legal duty, the statute is to operate. The opinion, as it seems to me, is not in harmony with the legislation on the subject, the trend of which indicates the legislative purpose. By the Massachusetts statute of 1844, chapter 82, it was provided that where premiums were paid in fraud of creditors, a proportional amount of the interest in the policy should inure to the benefit of such creditors. In 1854 (statute 1854, chapter 453, section 28) this was modified by giving to the creditors all of the premiums fraudulently paid for

policies, without limitation. By the act of 1864 (statute 1864, chapter 197) the limitation was appended thus, "subject, however, to the statute of limitations." Later the law was moulded in language of which our statute is a copy (statute 1894, chapter 522, section 73, now R. L., chapter 118, section 73). The further provision that the premiums are to inure to the benefit of the creditors "from the proceeds of the policy," is of importance only as furnishing a security for the payment of the premium in the hands of the insurance company, or in those of third parties. The evident scheme of the legislature was, and I entertain the notion that the restrictive terms of the proviso of the act were intended to place a limit upon the amount the beneficiary was to pay for the exemption or immunity afforded her by the statute, gradually scaled down by the bar, and not in limitation of the right of action which was already assured her by the statute for the limitation of actions. This was manifestly the conception of the statute of the judge who delivered the opinion in *Bailey* v. *Wood, supra,* and of Mr. Justice Hammond, who wrote the later opinion of *Bailey* v. *Wood, 202 Mass. 562,* in which he observed that "As the statute was originally passed, the right of the creditors was measured by a proportional part of the proceeds of the policy, but is now measured by the amount of premiums, with interest, subject to the statute of limitations." And his meaning is emphasized by another passage in which he says: "As to the matter of premiums, it (the statute) was amended so as to give the creditors only the amount of the premiums paid in fraud of them, instead of a proportionate share of the proceeds," and this right of the creditor was still further restricted by *Comp. Stat. 1864, chapter 197,* to those premiums not barred by the statute of limitations. (I note that Justice Hammond later sat in the case of *York* v. *Flaherty, supra.*) This construction was placed upon a similar act by the supreme court of Illinois (*Cole* v. *Marple, 98 Ill. 58; Houston* v. *Maddux, 179 Ill. 377;* see also *Wagner* v. *Koch, 45 Ill. App. 501*). As already observed, it appears to me that the obvious legislative design was to fix a maximum sum which the proceeds of the policy could be made to yield, subject to being diminished by the supervening of the limitations contained in

the act defining the liability. To ascribe to the restriction of the proviso the meaning contended for by the complaint, would be to altogether excise it from the act, or to ignore its consideration. My conclusion upon this phase of the case is that the complainant can only recover for an amount equal to the premiums paid within six years of the filing of the bill.

The next ground of defence is that $2,636.42, borrowed by the assured on the security of the policies, and deducted by the insurance company from the proceeds, should be set off against the premiums. The point was raised and decided in *York* v. *Flaherty, supra,* and I adopt the ruling that "Full premiums * * * were in fact paid both before and after the loan was made, and the statute is expressed that these payments shall inure to the benefit of the husband's creditors * * * She (the beneficiary) has chosen to claim the benefit of the statute which gives to her the proceeds of the policy at the expense of his creditors; she must bear the burden which the same statute puts upon her by accounting to them for the amount of the premiums which were paid in fraud of their rights. As was said by the plaintiff in his brief, it would frustrate the purpose of the statute to allow her to diminish this amount by deducting therefrom the amount of this loan, or even by reducing it in proportion to the amount of the loan as compared with the total amount of the policy."

In the next place, the defendant contends that the contracts of insurance were made in the State of New York, and that the laws of that state govern. The exemption there is "except that the premium actually paid out of the husband's property exceeds $500, that portion of the insurance money which is purchased by excess of premium above $500, is primarily liable for the husband's debts." If this litigation were between the beneficiary and the company upon the policies, the argument advanced, assuming the premises to be true, would be pertinent. But, here the effort is to subject property, created by a debtor of this state in fraud of creditors, to the payment of his debts, which property the fraudulent grantee is permitted to hold by virtue of an enabling statute of this state, only upon condition that if called upon, she discharge the obligation imposed by that

statute. Regarding the act as one operating upon the assets of an insolvent debtor, it becomes an immaterial issue where and under what laws the property was acquired. *Miller* v. *Campbell, 140 N. Y. 457.*

The defendant paid out of the proceeds of the policy $1,851.61 to certain creditors of her husband, for which amount she claims allowance out of the premiums. It is not shown by the state of the case when the debts were created, and consequently it does not appear that any of the premiums were paid in fraud of these creditors. The statute creates a fund, measured by the premiums, only for those creditors in fraud of whom the premiums were paid, and this fund cannot be resorted to to pay creditors not within the class. Payments voluntarily made to creditors protected by the statute, would be entitled to allowances. *Horton* v. *Bamford, 79 N. J. Eq. 356; Thompson* v. *Williamson, 67 N. J. Eq. 212.*

The defendant received from the Royal Arcanum, a beneficial association, of which her husband was a member, $2,000. His membership dues amount to $370.14. During six years prior to his death, he paid in dues $149.76. This form of life insurance seems not to be within the protection of the Insurance act (*2 Comp. Stat. p. 2836*). The Royal Arcanum was incorporated and exists under an act entitled "An act regulating fraternal beneficiary societies, orders or associations," approved March 11th, 1893; and is excluded from the operation of the Insurance act by section 90. But section 19 of the Fraternal Beneficiary Society act (*1 Comp. Stat. p. 200*) provides:

"That the money or other benefit, charity, relief or aid to be paid, provided or rendered by any association authorized to do business under this act, shall not be liable to attachment by trustee, garnishee or other process and shall not be seized, taken, appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of a certificate-holder or of any beneficiary named in a certificate, or of any person who may have any right thereunder."

From this it would appear that these dues or premiums cannot be reached. The question, however, is not before me. The facts above related are stated in the agreed state of facts, but they are not counted upon by the complainant in his bill.

The complainant filed his bill "for his own benefit and the benefit of such other creditors of the deceased as shall come in under this bill and contribute to the expenses of this suit." One creditor having a claim of $1,000, with interest from October 22d, 1907, was admitted upon petition, as a party-complainant. This practice tends to convenience and economy, and is not objectionable. *Iauch* v. *de Socarras, 56 N. J. Eq. 524*, is cited in approval. But, because of this open bill, the complainant is not to lose his right of priority of payment, earned by his diligence. "Where property has been fraudulently conveyed by a person who afterwards dies, such a property is not assets in the hands of the administrator for general distribution among all the creditors. The administrator cannot file a bill and reach such property, but a creditor can; and when he obtains a lien by filing a bill, and, in the end, recovers the property, he is justly entitled to be rewarded for his superior diligence, and receive the payment of his debt before other creditors can come in. We do not regard this, however, a new question in this court." *Cole* v. *Marple, supra; Whitney* v. *Robbins, 17 N. J. Eq. 360.*

If, according to the conclusion at which I have arrived, the premiums are not sufficient to pay the complainant and the joining creditor, the complainant will be paid first, with costs.