G. P. FARMER COAL AND SUPPLY COMPANY et al.

*v.*

MAYME H. ALBRIGHT et al.

[Submitted March 3d, 1919. Decided March 24th, 1919.]

1. Under policies of life insurance, payable to insured's wife, containing options or privileges of assignment, surrender for cash value, or substitution for another form of policy, or change of beneficiary, none of which options were exercised by the insured during his life, the proceeds of the policies, after the death of the insured, are payable to the beneficiary named in the policies, and not to a judgment creditor of the deceased, except as to premiums paid thereon by the insured after his insolvency.

CASES IN CHANCERY, 1918–1919.        133

*90 N. J. Eq.*        G. P. Farmer Coal & Supply Co. *v.* Albright.

2. Section 38 and section 39 of the Insurance act (*2 Comp. Stat. p. 2850*) are not unconstitutional as violating the provision that laws shall have but one object and that object shall be expressed in the title.

3. That policies of insurance are by their terms payable in another state is immaterial in a suit by a creditor who seeks in this court to subject the proceeds of the policies to the lien of his debt.

On bill, &c.

*Messrs. Kellogg & Chance,* for the complainants.

*Messrs. Durand, Ivins & Carton,* for the defendants.

FOSTER, V. C.

This is a creditors' bill by which it is sought to effectuate the lien obtained in an attachment suit, and to subject certain property attached therein to the claims of the creditors of A. Fred Albright. The property in question consists of a small sum of money in bank, two shares of bank stock and the proceeds of two policies of life insurance on the life of A. Fred Albright, the deceased debtor. These proceeds have been paid into court by the defendant insurance companies and are claimed by the defendant Mayme H. Albright as the widow of A. Fred Albright and the beneficiary named in both policies.

Under date of November 11th, 1906, the Provident Life and Trust Company of Philadelphia issued its policy insuring Mr. Albright's life for $3,000, and the same was made payable on his death to his wife, Mayme H. Albright, if living.

On October 28th, 1910, the New York Life Insurance Company issued its policy on the life of Mr. Albright for $2,500, payable on his death to his wife, Mayme H. Albright.

Under the provisions of the Provident life policy the insured was given the options or privileges of assigning it, of surrendering it for its cash value, and to substitute for it an endowment form of policy.

Under the New York life policy the options and privileges were reserved to the insured to change the beneficiary, to surrender the policy for its cash value, to assign it and to substitute an endowment policy for it.

Mr. Albright became indebted to the complainant G. P. Farmer Coal and Supply Company (the other complainant is the auditor in the attachment case and is not referred to hereafter) on August 20th, 1915; and on March 31st, 1917, the writ of attachment was issued. On April 12th, 1917, Mr. Albright, died without having exercised any of the options or privileges reserved to him by the terms of either policy.

On August 8th, 1917, judgment was entered in the attachment proceedings in favor of the complainant for $6,268, and it is not disputed that the debtor's estate, independent of the proceeds of these policies, is not sufficient to satisfy the amount due on this judgment.

Complainant's first contention is that the proceeds of the policies are part of Mr. Albright's estate, and not the property of the beneficiary named therein, because of the control reserved to him by the options and privileges mentioned; and that our statute exempting certain life insurance policies from the claims of creditors does not exempt these policies because of the control over them which was reserved to the insured by their terms. This claim is based on the theory that where such control or option or privilege is reserved to the insured, a complete and valid gift has not been made of the policies, or their proceeds, to the beneficiary, or a valid trust created therein for her benefit; in other words, that so long as the insured retained any control over the policies and had the right to change the beneficiary therein, or to surrender them for their cash value, or to substitute endowment policies in their place, he had not so completely parted with his dominion over them as to vest them in the beneficiary as completed gifts, and that with the retention of such control the insured thereby retained his ownership of the policies and their proceeds, and as they were his property, they should be applied to the payment of his debts.

And it is claimed that the present case by this reservation of control and dominion is easily distinguished from *Sullivan* v. *Maroney, 76 N. J. Eq. 104; affirmed, 77 N. J. Eq. 565,* and *Lanning* v. *Parker, 84 N. J. Eq. 429; 94 Atl. Rep. 64,* in which the effect of such reservation was not considered or decided; but

I do not find this distinction to be as apparent as claimed. The control, reserved to the insured by the terms of the policies, was required by the policies to be exercised in a prescribed manner, and, until it was so exercised, the rights of the insured and of the beneficiary were not changed or altered in the slightest degree, or as Vice-Chancellor Garrison stated the rule in *Sullivan* v. *Maroney, supra* (at *p. 110*):

"I think it entirely clear from the authorities that where a contract of insurance is made payable to certain beneficiaries, their interest therein can only be divested in favor of other beneficiaries by changing the contract in the manner in which the contract points out that it must be changed to effect that result."

It is contended, however, that this rule only applies to a change in beneficiary and does not apply to or affect the rights of the insured himself, and this contention makes it necessary to inquire what rights had the insured in the policies under the options and privileges reserved to him.

As I view them, they were not property rights; they were not vested rights; they were not rights that were of the slightest monetary value in themselves, and could not become such until the insured had exercised them in the prescribed manner, which he never did; at the most they were merely potentialities which the insured never converted into actualities; and until he had effected this conversion the rights of the beneficiary in the policies and their proceeds were not limited or affected to the slightest extent. All of the rights reserved to the insured were personal in their application; some of them were conditioned upon the state of his health, others upon his age, and all of them upon his personal action. Vice-Chancellor Backes, in the recent case of *Anderson* v. *Broad Street National Bank of Trenton et al., 90 N. J. Eq. 78,* held—

"That whether the interest (of the beneficiary) be regarded as vested or defeasible, contingent, a mere expectancy, or whatever the characterization may be, if the policy stipulates the course by which the beneficiary's interest is to be nullified, he cannot be deprived of his right unless the prescribed mode for its destruction is followed."

The mere reservation to the insured of the right to nullify or destroy the interest of the beneficiary cannot be extended or enlarged to such an extent that the reservation is to be regarded as operating automatically from the time it was made, and which would have the effect on these policies of canceling the interest of the beneficiary therein at the same instant she was named therein as beneficiary. To hold thus would not only be an absurdity, but would be violative of the policy adopted by the legislature in the enactment of sections 38 and 39 of our Insurance act. *Comp. Stat. p. 2850.* Section 39 provides that—

"Every policy of life insurance made payable to or for the benefit of a married woman  *  *  *  whether procured by herself, her husband or any other person  *  *  *  shall inure to her separate use and benefit  *  *  *  according to the provisions of the policy,  *  *  *  subject to the above provisions (in section 38) relating to premiums paid in fraud of creditors."

It is insisted, however, that these provisions of our Insurance law have no application to the present situation, because they relate to irrevocable policies of insurance on the husband's life in favor of his wife, and not to policies like those under consideration that were revocable at the whim or option of the insured.

I am unable to find any provision in the statute limiting its application to irrevocable policies, and I am unwilling to adopt this narrow view of the purpose and policy of the legislature in its enactment. As Vice-Chancellor Backes pointed out in *Lanning v. Parker, supra,* this legislation was enacted to correct the unsettled condition of the law regarding the rights of creditors, and family beneficiaries, to which Vice-Chancellor Pitney directed attention in his opinion in *Merchants' and Miners' Transportation Co. v. Borland,* 53 *N. J. Eq. 282:* and the language of the statute clearly indicates that the legislative purpose was to declare that the provision which a man by his life insurance had made for the support of his wife and children after his death, should not be wholly subordinate to the claims of his creditors, without distinguishing whether such provision was made by a policy revocable or irrevocable in form. This does

no injustice to his creditors, because their rights in the insured's estate have only been affected to the extent that he has used his funds in the payment of premiums; and to that extent, subject to the statute of limitations, their rights are fully protected by the statute. Nothing else has been taken from his creditors by an insurance upon his life for the benefit of his wife and children.

It is further insisted that sections 38 and 39 of the Insurance act cannot bar complainants' right to relief because the act is unconstitutional, in that it violates the constitutional requirement, that every law shall embrace but one object and that shall be expressed in the title, and by this act it is claimed the attempt was made (1) to operate on the assets of insolvent debtors, (2) to abrogate in part the common law rule against the validity of gifts from husband to wife, and (3) to allow exemptions in favor of the wives of debtors.

The title of the act is, "An act to provide for the regulation of insurance companies and to regulate the transactions of insurance business in this state."

In *Bumsted* v. *Govern, 47 N. J. Law 368,* Mr. Justice Dixon speaking for the supreme court said—

"It is not necessary to review the numerous decisions involving the application of this and similar clauses. It is on all hands agreed that its purpose is to require the title of a bill to be such as will inform the public and the members of the legislature of the object of the enactment and that this purpose is accomplished when the title fairly indicates the general object although it does not indicate the method of attaining the object." Without further citations on this point, I consider the title in question meets the test in the case quoted and in the numerous cases in which this provision of the constitution has been passed upon.

The remaining features of complainants' contentions are that although it appears that the policies were delivered to the insured, and the first premiums were paid thereon in this state, the laws of Pennsylvania and New York, and not the law of New Jersey, govern this case, because the policies were issued by corporations of those states and are by their terms payable

at the home office of the respective companies in Philadelphia and New York.

This fact might have some weight, if it were not for the purpose for which this action is brought and the parties to it, and I adopt the language of Vice-Chancellor Backes in *Lanning* v. *Parker, supra,* as particularly appropriate on this point, where he said—

"If this litigation were between the beneficiary and the company upon the policies, the argument advanced, assuming the premises to be true, would be pertinent. But, here the effort is to subject property, created by a debtor of this state in fraud of creditors, to the payment of his debts, which property the fraudulent grantee is permitted to hold by virtue of an enabling statute of this state, only upon condition that if called upon, she discharge the obligation imposed by that statute. Regarding the act as one operating upon the assets of an insolvent debtor, it becomes an immaterial issue where and under what laws the property was acquired."

My conclusion is that complainant's relief must be limited to what the statute expressly gives it, *i. e.,* the premiums paid on the policies in fraud of creditors, and that will include all premiums paid after the indebtedness due complainant was incurred on August 20th, 1915, and which amount to $181.26. Such payments are regarded as voluntary gifts, and therefore conclusively fraudulent as to creditors. *Haston* v. *Castner, 31 N. J. Eq. 697; Merchants' and Miners' Transportation Co.* v. *Borland, supra; Lanning* v. *Parker, supra.*

A decree will be advised for complainant for the amount of premiums paid as stated, and for the cash in bank, and also for the two shares of bank stock to which Mrs. Albright made no claim at the hearing.