## In re PINALS.

District Court, D. New Jersey.
January 14, 1930.

McCarter & English, of Newark, N. J., for Metropolitan Life Ins. Co.

Harold Remington, of New York City, for trustee in bankruptcy.

CLARK, District Judge. We do not believe that there are many members of the bar or of the bench who have not at one

time or another consulted and/or quoted from Dillon on Municipal Corporations. We do not suppose that in doing so, more than a few were familiar with the remarkable facts of the distinguished author's career as a doctor of medicine, United States circuit judge in the state of Iowa, and finally as leading authority in his chosen branch of the law. An even smaller number probably have heard this story related to the writer of this opinion by his father, a friend and neighbor of Judge Dillon's. In argument before the Supreme Court of the United States, the latter stated some proposition of law to the court. Instantly, opposing counsel was on his feet with a volume of the speaker's work in his hand and the quotation, "I appeal from Philip drunk to Philip sober." (It being understood, of course, that the intoxication referred to was mental, not physical.)

The court feels that it can dispose of one of the issues in the case at bar in the same way. With sincere admiration, it compares the text-book on bankruptcy of counsel for the trustee (Mr. Remington) to that of Judge Dillon. We think that the exhaustive and accurate nature of the research shown in that ten-volume compendium makes it the first resort of lawyers and judges. What would such inquiry show in the principal case?

The conceded facts frame the issue for our decision thus: A bankrupt has an ordinary policy of life insurance containing the change of beneficiary and cash surrender value provisions of the standard policy. His wife is the beneficiary. Is she or his trustee in bankruptcy entitled to the cash surrender value of such policy? The answer to this question is in part at least a matter of statutory construction. The pertinent provisions are sections 6 and 70(a)(5) of the Bankruptcy Act of 1898 (11 USCA §§ 24, 110(a)(5) and sections 38 and 39 of the Insurance Act of New Jersey (2 Comp. St. 1910, p. 2850, §§ 38, 39), which are set forth below:

"Sec. 70. *Title to Property.*—a. The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might

have been levied upon and sold under judicial process against him: Provided, That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." U. S. C. A. Title 11, § 110 (a) (5).

"Sec. 6. *Exemption of Bankrupts.*—a. This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition." U. S. C. A. Title 11, § 24.

"38. *Beneficiary of policy; right to proceeds; right of action; premiums paid in fraud of creditors.*—When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; and the person to whom a policy of life insurance is made payable may maintain an action thereon in his own name; provided, that, subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors." P. L. New Jersey 1902, p. 422.

"39. *Policies to inure to benefit of married woman.*—Every policy of life insurance made payable to or for the benefit of a married woman, * * * or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any

other person, shall inure to her separate use and benefit, and to that of her children, according to the terms and provisions of the policy or assignment, subject to the above provisions relating to premiums paid in fraud of creditors." P. L. New Jersey 1902, p. 422 (2 Comp. St. 1910, p. 2850, §§ 38, 39).

We have referred to these sections as pertinent. This is only a half-truth, and we think that Mr. Remington's book sufficiently demonstrates that he obscured the other half while acting as an advocate rather than as an author.

■■ There would seem to be two separate problems to be solved: First, does the cash surrender value of the policy pass to the trustee under the terms of section 70(a), 11 USCA § 110(a); and, second, even if it does so pass, is it exempt under the terms of sections 38 and 39 of the Insurance Act given effect to by section 6 of the Bankruptcy Act? We mention this because both counsel, according to their briefs at least, consider them more or less as one. It is, nevertheless, important to preserve this distinction, not only for the sake of orderly reasoning, but more expressly because of the peculiar doctrine of comparative weight of authority growing out of our dual system of government. The writer of this opinion has before remarked on the necessity for some sort of digest of the Congressional Record for the use of the United States judges and others required to interpret Federal legislation. The Supreme Court, for instance, in the leading case construing section 70(a), Burlingham v. Crouse, 228 U. S. 459, on page 473, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, makes various references to the purpose of Congress. It does not appear, however, that the learned Justices had before them the statement of the Chairman of the Judiciary Committee of the House of Representatives, who was in charge of the bill in the Second Session of the Fifty-Fifth Congress. In 31 Congressional Record, p. 1792, we find:

"Mr. Henderson: I do not know about the California law. But the purpose of the provision which the gentleman has read, which is known as 'the Smith amendment,' having been offered by Mr. Smith of Kentucky, a member of the committee, was this: That where a man who becomes insolvent is carrying life insurance, not for the benefit of his wife or children, but life insurance which belongs to his estate, its present cash value, if it can be ascertained, shall be paid or secured, but without subjecting the man to the necessity of reinsuring at an older age than that at which the policy was taken.

"Our bill proceeds upon the presumption that in such cases the policy ought to go into the man's estate and belong to his creditors; but the provision is so worded that if, for instance, the policy was taken at the age of 21 and the man is now 51, he should be allowed to carry the policy at the existing rate and not at the rate of the later age."

This statement seems to us at least a powerful argument in favor of the views expressed by Mr. Remington in sections 1243 and 1244 of his book, wherein he takes respectful issue with the views of the Supreme Court as expressed in the case of Burlington v. Crouse above cited and its companion cases of Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, and Andrews v. Partridge, 228 U. S. 479, 33 S. Ct. 570, 57 L. Ed. 929. It is only because of the incipient coauthorship by the writer of this opinion of a book on the bankruptcy systems of the world that he has been constrained to undertake the arduous task of examining the debates in the legislative bodies of the various countries. Without the help of some such trained experts as are employed by the West Publishing Company, it can be only reasonably certain that the above quotation is the only reference to section 70(a), 11 USCA § 110(a). In any event, he finds no congressional comment which will enlighten him concerning the meaning of subsections 3 and 5 of 70(a), 11 USCA § 110(a) (3, 5) in so far at least as they relate to the present inquiry.

It may be conceded in limine that in the standard policy both the right to surrender the same and the right to change the beneficiary are options or privileges reserved to the insured, either one of which, if exercised, would clearly convert the policy into property in his hands. It would seem, therefore, that the emphasis placed on the change of beneficiary clause is unwarranted. The United States Supreme Court and the highest court of New Jersey have reached exactly opposite conclusions in considering the effect of insolvency upon insurance policies containing the above-mentioned clauses.

In Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 37, 62 L. Ed. 143, the United States Supreme Court held that such a policy passes to the trustee on the ground that to hold otherwise would be "to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud." In Anderson v. Broad Street National Bank, 90 N. J. Eq. 82, 105 A. 599, affirmed 91 N. J. Eq. 331, 109 A. 205, on the other hand, the Court of Chancery of New Jersey considered the power to change a beneficiary could be exercised

(and of course, therefore, the right to surrender) only in the method prescribed in the policy. From this it both follows and was held to follow, G. P. Farmer Coal & Supply Co. v. Albright, 90 N. J. Eq. 132, 106 A. 545, that the insured alone, and not either his creditors or his trustee in bankruptcy, could exercise the privilege reserved by him.

A threefold argument both can be and is made in courts adhering to the New Jersey view. If the life insurance policy contains no cash surrender value clause and simply a change of beneficiary provision, it may very reasonably be said that the insured does not come within the description of the word "beneficiary" and therefore cannot effect a change in his own favor. Some such thought seems to have been in the mind of the Circuit Court of Appeals for the Second Circuit, when they said, speaking through Judge Lacombe, in the case of In re Hammel & Co., 221 F. page 58:

"The policy contains a clause authorizing the insured to change his beneficiary, a perfectly proper clause; she might predecease him, or desert him, or become unfaithful. There is nothing to suggest any such reason for making a change. On the contrary, the presumption is that now, when he is a bankrupt, and his death in the near future would, except for this insurance, possibly leave her in poverty, he would not voluntarily cancel his designation of her as the beneficiary. It cannot be assumed that, of his own motion, he would take away from her the small sum which the beneficial system of life insurance and his own savings during 12 years have made it possible to secure to her as a last resource, should he die and leave nothing behind him. The proposition that he should be constrained against his will, by an order enforceable by imprisonment in the event of disobedience, to deprive his wife of her present interest in the policy, to make himself the beneficiary, to borrow two-thirds of the $3,-000 from the company, and turn it over to his creditors, and then to make her again the beneficiary of the remaining third, seems contrary to public policy and to good morals."

In policies having both clauses, a strict construction excludes either the surrender or the change by the trustee in bankruptcy, since the contract provides for action by the insured himself. A broader view reaches the same result by holding that the right of revocation by either surrender or change is neither a power nor property within those terms as used in the Bankruptcy Act. This on the theory that their exercise depends on considerations of home economics, so to speak, and family affection, which must be personal to the bankrupt. A similar situation is found in the exercise of a power of appointment, which has been held not to vest in the trustee. Forbes v. Snow, 245 Mass. 85, 140 N. E. 418. So also we find Vice Chancellor Foster in Farmer Coal & Supply Co. v. Albright, above cited, saying, at page 135 of 90 N. J. Eq., 106 A. 545, 546:

"As I view them, they were not property rights; they were not vested rights; they were not rights that were of the slightest monetary value in themselves, and could not become such until the insured had exercised them in the prescribed manner, which he never did. At the most they were merely potentialities which the insured never converted into actualities; and, until he had effected this conversion, the rights of the beneficiary in the policies and their proceeds were not limited or affected to the slightest extent. All of the rights reserved to the insured were personal in their application; some of them were conditioned upon the state of his health, others upon his age, and all of them upon his personal action."

The reasoning of the United States Supreme Court in Cohen v. Samuels, above cited, appears to be one of policy rather than of legal principle. With respect, we feel that the policy against fraud on creditors is already covered by other well-known principles of insolvency law; and, further, that an equally strong policy in favor of life insurance beneficiaries is expressed in the cases we are now about to discuss. At any rate, legal precedent in this instance is in accord with our legal inclination. The United States Supreme Court's construction of a Federal statute is, of course, binding. In the principal case, however, such construction depends on the court's view of the character of the subject-matter referred to by the statute. This, in turn, depends on the interpretation of a contract. It is elementary that the rulings of the state courts with respect thereto must be followed by United States judges. Kansas City Life Ins. Co. v. Adamson (D. C.) 24 F.(2d) 712, and cases cited.

■ Coming, then, to the second phase of our problem, namely, even assuming the cash surrender value of the policies pass to the trustee, is it nevertheless exempt under the state Insurance Act? It is here that we appeal to Mr. Remington to destroy his own argument. The learned referee based his decision now appealed from squarely on the authority of Cohen v. Samuels, above cited and

the later decided case of Cohn v. Malone, 248 U. S. 451, 39 S. Ct. 141, 63 L. Ed. 352, which were urged upon him by counsel for the trustee. Neither of these cases involved any state exemption statute. Thirty-one years before the passage of the act containing the provision with which we have just been concerned, Congress first recognized in a Bankruptcy Act (that of 1867) the exemption laws of the various states. So, we find section 14 of the Act of 1867 reading as follows:

"That there shall be excepted from the operation of the provisions of this section [14] the necessary household and kitchen furniture * * * and such other property not included in the foregoing exceptions as is exempted from levy and sale upon execution or other process or order of any court by the laws of the State in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy, to an amount not exceeding that allowed by such State exemption laws in force in the year one thousand eight hundred and sixty-four." 14 Stat. 522, c. 176.

It may be that the failure to include such provision in the earlier acts may have been a cause of their speedy repeal. Laws of the United States, vol. 2, p. 19; vol. 5, p. 440. At any rate, an even cursory glance at the Debates in Congress at the time of the passage of the act of 1867 indicates the importance of this part of the act in respect to the whole scheme. Congressional Globe, 39th Congress, pp. 949 and 957. A great part of the opposition to national bankruptcy came from those who felt that the Federal power would interfere with the protection afforded by local statutes. To give only one instance:

"Mr. Howard. But, Sir, I will not occupy the time of the Senate further on this subject. I have no doubt about the constitutionality of this clause which is now sought to be stricken out, and I am free to say that rather than see such an attempt to sweep away a whole system of exemption laws existing in my own State succeed I shall vote against the bill. I do not think the people of my State or the people of any other State will quietly endure the monstrous injustice which would flow from such an enactment."

The language of section 6 of the present act (11 USCA § 24), above quoted, although perhaps less involved, is of the same legal tenor as that of the earlier act. As might be expected, we find an exactly similar spirit pervading the Debates of Congress of 1898. 33 Congressional Record, p. 1931 et sequitur.

Manifestly, then, if there is a state statute, it must govern. Both Mr. Remington and the United States Supreme Court so hold, the former of course basing his views on those of the latter. So, section 1246 of Remington on Bankruptcy reads:

"In any event policies exempt by State law do not pass, even if payable to the bankrupt or his estate and though they have cash surrender value and are not redeemed, the State exemption laws, by virtue of section 6 and section 70(a) of the Bankruptcy Act [11 USCA §§ 24, 110(a)] controlling all other sections of the act."

In support of the text, the learned author quotes the following from the case of Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 658, 49 L. Ed. 1018:

"As we have said, § 6 of the act adopts, for the purposes of the bankruptcy proceedings, the exemptions allowed by the laws of the several states. * * *

"It is beyond controversy that, if the section just quoted stood alone, the policies in question would be exempt under the bankrupt act. The contention that they are not arises from what is assumed to be a limitation imposed upon the terms of § 6 by a proviso found in § 70a of the act [11 USCA §§ 24, 110(a)]. * * *

"Considering the matter originally, it is, we think, apparent that § 6 is couched in unlimited terms, and is accompanied with no qualification whatever. Even a superficial analysis of § 70a demonstrates that that section deals not with exemptions, but solely with the nature and character of property, the title to which passes to the trustee in bankruptcy. The opening clause of the section declares that the trustee, after his appointment, shall be vested 'by operation of law with the title of the bankrupt, * * * except in so far as it is to property which is exempt,' and this is followed by an enumeration, under six headings, of the various classes of property which pass to the trustee. Clearly, the words 'except in so far as it is to property which is exempt,' make manifest that it was the intention to exclude from the enumeration property exempt by the act. This qualification necessarily controls all the enumerations, and, therefore, excludes exempt property from all the provisions contained in the respective enumerations. The meaning now sought to be given to the proviso cannot in reason be affixed to it without holding that the words 'except in so far as it is the property which is exempt,' do not con-

trol and limit the proviso. But to say this is to read out of the section the dominant limitation which it contains, and, therefore, to segregate the proviso from its context, and cause it to mean exactly the reverse of what, when read in connection with the context, it necessarily implies."

If the Legislature of New Jersey had used words appropriate to the exact situation of the principal case, this litigation would not perhaps have arisen. The habit of deliberative bodies is sometimes otherwise, even where the facts are fully before them at the time of the action. Here the subsequent progress of life insurance practice requires a search for a purpose and policy rather than a description. The courts of New Jersey have found that purpose and policy abundantly clear and have so stated. G. P. Farmer Coal & Supply Company v. Albright, 90 N. J. Eq. 132, at page 136, 106 A. 545, 546, Vice Chancellor Foster saying:

"I am unable to find any provision in the statute limiting its application to irrevocable policies, and I am unwilling to adopt this narrow view of the purpose and policy of the Legislature in its enactment. As Vice Chancellor Backes pointed out in Lanning v. Parker, supra [84 N. J. Eq. 429, 94 A. 64], this legislation was enacted to correct the unsettled condition of the law regarding the rights of creditors, and family beneficiaries, to which Vice Chancellor Pitney directed attention in his opinion in Merchants' & Miners' Transportation Co. v. Borland, 53 N. J. Eq. 282, 31 A. 272; and the language of the statute clearly indicates that the legislative purpose was to declare that the provision which a man by his life insurance had made for the support of his wife and children after his death should not be wholly subordinate to the claims of his creditors, without distinguishing whether such provision was made by a policy revocable or irrevocable in form. This does no injustice to his creditors, because their rights in the insured's estate have only been affected to the extent that he has used his funds in the payment of premiums; and to that extent, subject to the statute of limitations, their rights are fully protected by the statute. Nothing else has been taken from his creditors by an insurance upon his life for the benefit of his wife or children."

This interpretation of the New Jersey insurance policy exemption clause by our Chancery Court is in full accord with the views of courts all over the country. Statutes of similar tenor were passed in nearly every state coincident with the wise increase in life insurance. In only four reported cases has the exemption been denied. In three of these the ruling followed from a constitutional limitation on the power to exempt. In re Cooper's Estate (D. C. Md.) 28 F.(2d) 438; Whiting v. Squires (C. C. A. N. C.) 6 F.(2d) 100; In re Cunningham (D. C. S. C.) 15 F.(2d) 700.

In Re Hammells (D. C.) 5 F.(2d) 879, the Arizona statute considered expressly granted the exemption to a surviving wife, and manifestly, therefore, had no application as against the trustee of a living bankrupt.

On the other hand, statutes in force in seventeen states have been uniformly interpreted by the United States courts in favor of exemption. So we find the provisions of the state law in the following statutes construed in the cases as set forth below: Alabama—Blumberg v. Coxe (C. C. A.) 8 F.(2d) 735. Florida—In re Morgan (D. C.) 282 F. 650. Iowa—Jens v. Davis (C. C. A.) 280 F. 706. Kansas—In re Morse (D. C.) 206 F. 350. Kentucky—In re Pfaffinger (D. C.) 164 F. 526. Michigan—In re Bendall (D. C.) 28 F.(2d) 999. Minnesota—Ralph v. Cox (C. C. A.) 1 F.(2d) 435. Missouri—In re Orear (C. C. A.) 189 F. 890. New Hampshire—In re Whelpley (D. C.) 169 F. 1019. New York—In re Messinger (C. C. A.) 29 F.(2d) 158. Ohio—In re Weick (C. C. A.) 2 F.(2d) 647. Oklahoma—Brown v. Home Life Ins. Co. of New York (D. C.) 3 F.(2d) 661. Pennsylvania—In re Booss (D. C.) 154 F. 494; In re Lang (D. C.) 20 F.(2d) 236, affirmed sub nomine Dussoulas v. Lang (C. C. A.) 24 F.(2d) 254. South Dakota—In re Carlon (D. C.) 189 F. 823; Magnuson v. Wagner (C. C. A.) 1 F.(2d) 99. Tennessee—In re Stansell (D. C.) 8 F.(2d) 363. Washington—Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018. Wisconsin—In re Churchill (C. C. A.) 209 F. 767.

It is perhaps significant that the courts seem to have consistently resolved what the writer of an interesting note in the Harvard Law Review for March, 1929 (volume 42, p. 698) has referred to as "common difficulties of interpretation" in favor of what they deem to be a general policy for exemption. So they have not required the express inclusion in the statute either of the word "exempt" or a reference to the change of beneficiary clause. Furthermore, at any indication of a doubt on the part of the courts, the Legislatures of the states concerned have immediately made their original purpose quite plain by the inclusion of words designed expressly to remove that doubt.

The order of the referee is reversed.