## In re HIRSCH.

District Court, S. D. New York.
April 25, 1933.

Frackman & Robins (by Joseph H. Robins), of New York City, for bankrupt.

Mathias Naphtali, of New York City, for objecting creditors.

GODDARD, District Judge.

This is a motion to confirm the report of the special master overruling the specifications of objecting creditors and confirming a composition.

Samuel Hirsch, the bankrupt, was engaged in the retail dry goods business in this city. On August 1, 1932, he executed an assignment for the benefit of his creditors which was filed the following day, and on September 1, 1932, an involuntary petition in bankruptcy was filed against Hirsch by three creditors. No application was made for the appointment of a receiver, and the sale of Hirsch's property was conducted by the assignee on September 12; the net proceeds of this sale amounting to $1,900. The schedules list forty-six general creditors having claims of a total of $6,336.77 and priority claims totaling $164. On September 9, 1932, Hirsch was adjudicated a bankrupt; on September 30, 1932, the bankrupt made an offer of composition to his creditors of 20 per cent. payable in cash; also to pay the priority claims amounting to $164, and to pay the statutory commissions of the assignee and the fees of the attorney for the petitioning creditors, and the attorney for the assignee amounting to $400, and the fees of the Referee. The total amount which has been deposited for the purpose of the composition was $1,850, this $1,850 being part of the $1,900 which the assignee obtained as the proceeds from the sale of the bankrupt's property. Hirsch's offer of composition was accepted by the majority of creditors in number and amount of the general allowed claims. One of three objecting creditors conducted an examination of the bankrupt for the purpose of framing specifications which later were duly filed. The objecting creditors' specifications were overruled by the special master. Eleven specifications were filed, but the two which seemed to me to require the most serious consideration are specifications "seventh" and "eleventh," which read as follows:

"Seventh Specification. That the said bankrupt, upon information and belief, at a time subsequent to the first day of the twelve months immediately preceding the filing of the petition at divers times thereafter, while insolvent, and with intent to hinder, delay and defraud his creditors, transferred, removed and concealed a portion of his property to wit, a large sum of money, by paying over to the Metropolitan Life Insurance Company of New York, and to the New York Life Insurance Company, divers sums of money as insurance premiums upon policies insuring the life of the said bankrupt, in favor of Rose Hirsch, the wife of the said bankrupt, as beneficiary and that this creditor cannot at this time state the exact dates of said payments, nor the amounts thereof, with further particularity."

"Eleventh Specification. Upon information and belief, that the said bankrupt, at a time subsequent to the first day of the twelve months immediately preceding the filing of the petition and at divers times thereafter, while insolvent, and with intent to hinder, delay and defraud his creditors, transferred, removed and concealed a portion of his property, to wit, a large sum of money, by paying over to the Metropolitan Life Insurance Company of New York and to the New York Life Insurance Company, divers sums of money as insurance premiums upon policies insuring the life of the said bankrupt, in favor of Rose Hirsch, the wife of the said bankrupt, as beneficiary and that this creditor cannot at this time state the exact dates of said payments, nor the amounts thereof, with further particularity."

The facts upon which these specifications are based were elicited by the counsel for the objecting creditors in his examination of the bankrupt and from witnesses, and are as follows:

On July 25, 1932, when Hirsch knew that he was insolvent, he repaid to the Metropolitan Life Insurance Company $728.84 on loans which he had obtained in 1930 and early in 1932 on insurance policies which he had taken out for the benefit of his wife, and on August 29, 1932, four days after he had retained an attorney to represent him in his insolvency proceedings, and two days before executing the assignment for the benefit of his creditors, he repaid loans totaling with interest $491.29 to the New York Life Insurance Company on policies he had taken out some years before in favor of his wife, which loans he had obtained upwards of six months previously from

that company, and he also paid advance premiums on those policies amounting to $137.59, which premiums were not due until January and March, 1933.·

The question presented, and which apparently has not been passed upon since section 55-a of the Insurance Law was enacted, is whether the payment of loans by the bankrupt on such policies and/or the payment of advance premiums on them when he knows he is insolvent, and shortly before a petition in bankruptcy is filed, is a fraud on then existing creditors and is sufficient to prevent the court's approval of a composition.

For the answer to this question it is necessary to examine the Bankruptcy Act and the statutes of the state of New York dealing with life insurance and its exemptions. The Bankruptcy Act § 6 (11 USCA § 24) provides that exemptions which are granted by the state in which the petition is filed and where the bankrupt has had his domicile shall not be effected. In other words, the rights to exemption in such insurance policies and premiums are determined by the statute, if any, of the particular state. In re Turnock & Sons (C. C. A.) 230 F. 985. In New York an exemption is allowed and its nature is defined in § 55-a of the Insurance Law (chapter 468, Laws 1927, § 1), which provides as follows: "§ 55-a. Rights of creditors and beneficiaries under policies of life insurance. If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person; provided, ·that, subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, un-

less before such payment the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specification of the amount claimed."

When Hirsch, knowing that he was insolvent, deliberately attempted to put beyond the reach of his creditors a· substantial portion of his property by repaying loans on these policies and by paying premiums on. them five or seven months before the premiums were due, it is clear that Hirsch presumedly intended to defraud his creditors. It was a voluntary transfer of his property and without any benefit or return consideration to the bankrupt's estate. In Re Julius Bros., 217 F. 3, at page 7, L. R. A. 1915C, 89, the Circuit Court of Appeals of this Circuit stated:

"There are two classes of transfers under the act:

"(1) Those which have been entered into with actual fraudulent intent.

"(2) Those where, from the terms of the agreement or the nature of the transaction itself, the fraudulent intent is presumed to exist as an inference of law.

"In the one class the fraudulent intent is always a question of fact, and in the other it is a question of law. Thus if one who is insolvent makes a voluntary transfer of his property, receiving no valuable consideration therefor, the law will infer the intent, even though he may have made the transfer with an honest motive. In such cases no evidence of intention can be received to change that presumption. Such a conveyance necessarily operates to hinder, delay, or defraud the creditors, and the grantor will in such a case be presumed to intend the natural and necessary consequences of his acts."

I can see little difference between the attempt made by Hirsch to deprive his creditors of the property which should have been used to pay his debts and an attempt by him to pocket some of the property for his own future use or to remove it beyond the jurisdiction of the court. In Houston v. Maddux, 179 Ill. 377, at page 385, 53 N. E. 599, 602, where a statute similar to the one in New York was involved, the court said: "In determining the meaning of the words, 'with intent to defraud his creditors,' as used in said section 19, the same rule of construction applies as is applicable in other cases of fraudulent voluntary conveyances. If the conveyance or transfer is voluntary, and results in

hindering, delaying, or defrauding creditors, it is regarded as fraudulent in law, without reference to the motive or actual intention of the party making the conveyance or transfer. Every payment of an insurance premium, made by John T. Houston within the time limited by the statute, while he was insolvent, was an unlawful diversion of his property from his creditors; and the amounts so paid must, under the statute, inure to the benefit of his creditors." See, also, Lanning v. Parker, 84 N. J. Eq. 429, 94 A. 64; G. P. Farmer Coal & Supply Co. et al. v. Albright et al., 90 N. J. Eq. 132, 106 A. 545; Aetna National Bank v. United States Life Insurance Co. (C. C.) 24 F. 770; Davis v. Gates (D. C.) 235 F. 192.

■ While it may be conceded that the payment of premiums (which amounted to more than 10 per cent. of the sum proposed to be paid to creditors) not due for five to seven months was fraudulent, it might be contended that the repayment by Hirsch of "loans" upon his policies was only payment of an antecedent debt and therefore merely a preference. Although the advance made by an insurance company on its policy is referred to as a "loan," strictly speaking it is not a loan but "an advancement." There is no personal liability; it is not a debt. The amount which the insurance company may be called upon to pay is only reduced to that extent. If the "advancement is repaid the value of the policy increases accordingly." The insurance companies in the case at bar had no claim which could have been proven in this bankruptcy proceeding. Board of Assessors of Parish of Orleans v. New York Life Insurance Co., 216 U. S. 517, 30 S. Ct. 385, 54 L. Ed. 597; Wagner v. Thieriot, 203 App. Div. 757, 197 N. Y. S. 560, affirmed 236 N. Y. 588, 142 N. E. 295; In re Hayes' Will, 252 N. Y. 148, 169 N. E. 120. Since there was no such debt recognized in the bankruptcy proceedings, Hirsch's payment to the insurance companies was not a mere preference.

Counsel for the bankrupt has cited Forsberg v. Security State Bank (C. C. A.) 15 F.(2d) 499, 49 A. L. R. 913, and First National Bank of Humboldt v. Glass (C. C. A.) 79 F. 706, which hold that it is not fraudulent for an insolvent debtor to convert nonexempt property into exempt property. But they are not applicable, for in those cases the property acquired was absolutely exempt under state statutes, while in the case at bar the statute expressly provides that no exemption is created when the payment is made with intent to defraud creditors.

I think that the objections set forth in the seventh and eleventh specifications should be sustained for the reasons above stated.

Section 14b (4) of the Bankruptcy Act, 11 USCA § 32 (b) (4), provides that transferring or concealing property with intent to delay or defraud creditors is a bar to a discharge, and section 12d (2), 11 USCA § 30 (d) (2), states that a composition shall not be confirmed if the bankrupt has been guilty of any act which would be a bar to his discharge.

Accordingly, the motion to confirm the proposed composition is denied.