MICHAEL SHURTS, executor &c.,

*v.*

ELLEN M. HOWELL and others.

A surety on a guardian's bond paid more than his aliquot share on account of his liability for such guardian's waste. He afterwards died, and also one of his co-sureties.—*Held*, that the executor of the first-named surety might, without having recovered a judgment at law, file a creditor's bill against the administrator and daughter of the co-surety, to set aside a mortgage given voluntarily by the co-surety to such daughter, and also to recover, from the co-surety's estate, the excess paid by his testator.

Bill for relief.   On bill and demurrer.

*Mr. H. S. Harris,* for the demurrer.

*Mr. John T. Bird,* for complainant.

THE CHANCELLOR.

It appears by the bill, that in March, 1866, Peter H. Aller, the complainant's testator, and Charles Howell, executed, with Isaac Wilcox, and as sureties for him therein, a bond given by him as guardian of his daughter, Hester Ann Wilcox, a minor, in the penalty of $7,000, to the ordinary of this state. The estate of the minor, to the amount of $3,285, came into the hands of the guardian, and was entirely wasted by him. Subsequently, in the year 1872, he was, on that account, and on account of his insolvency, removed from his office of guardian by the orphans court of Hunterdon county, and John Hull was, in March, 1874, appointed guardian in his stead. In April, 1874, Aller was, on inquisition, duly found to be a lunatic, and the complainant was appointed his guardian. On the 1st of April, 1876, the complainant, as such guardian (Wilcox being utterly insolvent), paid to Hull, as guardian of the minor, $2,000, on account, and in part discharge of the liability of Aller on

the bond. In the same month of April, Aller having died, leaving a will, of which the complainant was executor, the latter paid to Hull, as executor, the further sum of $1,996, in complete discharge of that liability. Howell died in 1875, intestate. After payment of the $2,000, the complainant applied to him for contribution, which was refused. The $1,996 were paid after his death. Since his death his administrator has refused to make contribution. Howell's estate has been declared insolvent. It appears that the personal estate amounts to only $54.50, and the real estate is valued at $2,925; that the claims presented amount to $3,845.68, of which, it is claimed, $3,235.33 are preferred debts. The complainant has not presented his claim. The administrator of Howell was, when the bill was filed, about to sell the lands of which Howell died seized, under an order of the orphans' court. They were and are subject to a mortgage of $2,000, dated the 29th of July, 1873, given by the intestate to his daughter, the defendant, Ellen M. Howell. She presented her claim on the bond to the administrator for payment, in due form, and in due time.

The bill alleges that the bond and mortgage were wholly voluntary, were made without consideration, and to hinder, delay and defeat the creditors of Charles Howell; that the administrator must, necessarily, under the proceedings in the orphans court, sell the land subject to the mortgage, and, though fraudulent, it would still be an apparent encumbrance and a cloud upon the title. The complainant, therefore, comes into this court for aid in the premises. If the claim under the mortgage is here declared to be fraudulent, he will then be able, through the sale of the real estate, to obtain payment of his debt.

The demurrer is a general one, and is filed by the administrator and Ellen M. Howell. The demurrants object that it does not appear, by the bill, that the complainant is a creditor of the estate of Howell; that the bill is multifarious; that the facts relied upon are not stated with positiveness, and

that the complainant has no standing in the cause, because he is not a judgment creditor.

That, under the circumstances stated in the bill, the estate of Howell is, in equity, liable to the complainant for contribution cannot be doubted. *De Colyar on Guaranties* 344. One of the objects of this suit is to establish that liability. The bill alleges that Howell, the intestate, and Allen, the testator, became co-sureties for Wilcox; that Wilcox became, in 1872, and ever since has been, and still is, insolvent; that the complainant, as guardian of Aller, was compelled to pay $2,000 of the money, for the payment of which Aller and Howell were sureties, and, as executor, the further sum of $1,996; that Howell's estate is declared to be insolvent, and that the insolvency arises from the fact that his daughter claims to be a creditor, by bond, for $2,000 and interest, secured by mortgage on her father's real property; that those instruments were merely voluntary, and were made in view of Howell's liability, as surety for Wilcox, with Aller, and to hinder, delay and defeat Howell's creditors. It seeks to set aside the bond and mortgage, for the benefit of the complainant, but failing that, for the benefit of all the creditors. If it be set aside there will be assets enough to pay all of Howell's debts, including the debt due to the complainant for contribution.

For the purpose of merely setting aside the fraudulent conveyance, it is not necessary that the complainant should have a judgment at law or decree in equity. *Loomis* v. *Tift*, 16 *Barb.* 541; *Phelps* v. *Clapp*, 50 *Barb.* 430; *Richards* v. *Smallwood*, 1 *Jac.* 552; *Reese River Silver Mining Co.* v. *Atwell*, *L. R.* (7 *Eq.*) 346; *Adames* v. *Hallett*, *L. R.* (6 *Eq.*) 468; *Skarf* v. *Soulby*, 1 *Mac. & G.* 364; *Haston* v. *Castner*, 2 *Stew.* 536. Proceedings at law to establish the debt, if successful, and resulting in a judgment, would give him no lien upon the estate of Howell. It could do no more, at best, than to establish the debt. He not only seeks in this suit to establish it, but he asks, also, that, when it shall have been established, this court will aid him in collecting it, by declaring

the encumbrance put upon the property by Howell, in favor of his daughter, and the alleged debt which it purports to have been made to secure, to be fraudulent at least as against him. He seeks thus to obtain for administration, by rescuing them from fraudulent hands, assets of the estate which cannot otherwise be reached. Clearly a creditor of a deceased person, though his claim be not in judgment, may obtain such relief in this court. *Skarf* v. *Soulby* and *Adames* v. *Hallett, supra.* Nor is the bill multifarious. It has only the purposes above indicated. The administrator is a necessary party, for the complainant not only seeks, by his bill, to establish a claim against the estate, but he asks an injunction to restrain the administrator from paying any money to the daughter, by way of dividend, out of the estate in his hands. Ellen M. Howell is, of course, interested in the question of the establishment of the complainant's debt, as well as in the main object of the suit. The purposes of the bill are germane to each other. Indeed, it may be said that the bill has but a single purpose, to reach assets in the hands of the daughter to be applied to or towards the satisfaction of the complainant's debt.

The facts stated in the bill on which the complainant relies for the relief which he seeks, are stated with sufficient certainty and clearness.

The demurrer will be overruled, with costs.