This suit was brought for the benefit of the original complainant John Borg and other creditors of De Witt McCroskery to recover the proceeds of three policies of insurance on decedent's life whereunder his brother J. Harry McCroskery is the beneficiary. The insurance company under its counter-claim in the nature of an interpleader, has paid $17,663.67 into court as the amount due on the policies.
The first policy, issued January, 1929, named the insured's wife as beneficiary. December 30th, 1929, he changed the beneficiary making the policy payable to his estate and December 16th, 1930, he made a final change naming his brother as beneficiary. The second policy, issued December, 1924, named the insured's estate as beneficiary. December 12th, 1925, he changed the beneficiary to his brother and September 10th, 1926, he changed to his wife and finally March 6th, 1934, to his brother. The third policy, issued November, 1926, named the insured's estate as beneficiary and March 6th, 1934, the beneficiary was changed to his brother. At all times and up to the insured's death, the policies reserved the right to the insured to change his beneficiary.
Patrick H. Maley, administrator cum testamento annexo of the insured's estate, was added as a party complainant and George Morrison a creditor who, prior to the payment into court had made claim on the insurance company for the amount of his debt, was brought in as a defendant on the insurance company's counter-claim. Borg, Maley and Morrison claim that the entire proceeds of the policies are applicable to the payment of the insured's debts, on the ground that the insured while insolvent changed his beneficiary in the first and third policies from his estate to his brother and failed to exercise his right under the second policy to change his beneficiary from his brother to his estate. For the beneficiary it is claimed that the utmost the insured's creditors can recover out of the proceeds of the policies is the amount of premiums paid on the policies by the insured while he was insolvent (with interest) and within six years prior to bringing this suit. *Page 82 
The insured died insolvent June, 1934, leaving debts of upward of $77,000, some of which were incurred in 1925, and a relatively small amount of unencumbered assets. The evidence shows he was in financial difficulties as far back as 1928 and that from that year until his death he had little available cash and was unable to meet his current financial obligations for clothing and necessaries, for repairs to his home, for interest on mortgage on his home, for principal and interest on borrowed money and that he had raised frequent loans on his policies wherewith to pay premiums thereon. For the beneficiary no evidence was offered bearing on the financial condition of the insured and for him it is conceded that the insured was insolvent in February, 1932, but I find that he was insolvent as early as January 15th, 1929, which is six years prior to filing the bill of complaint herein.
Were it not for the statutory provision hereinafter discussed, it might well be that as to the first and third policies the changes of beneficiary from the insured's estate to his brother were transfers of valuable contracts which otherwise would inure to and constitute assets of the insured's estate and having been made while the insured was insolvent, were fraudulent acts of the insured and would be set aside under rules which apply to transfers of other classes of property in fraud of creditors.
The statute to which I refer is section 38 of our Insurance act (Comp. Stat. p. 2850) and reads as follows:
"38. When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; and the person to whom a policy of life insurance is made payable may maintain an action thereon in his own name; provided, that, subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice *Page 83 
by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors."
For those who seek the entire proceeds of the policies it is claimed that section 39 of the same act should be read in connection with and as part of section 38 and when so read, a legislative intent is disclosed to protect only a wife named as beneficiary, and her children, against the claims of the insured's creditors. Section 39 reads as follows:
"Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit, and to that of her children, according to the terms and provisions of the policy or assignment, subject to the above provisions relating to premiums paid in fraud of creditors."
It is pointed out in Merchants' and Miners' TransportationCo. v. Borland, 53 N.J. Eq. 282, decided in 1895, that up to that time the only statute purporting to change common law rights in proceeds of life insurance was an act of 1851 (Nix. Dig.
(1868) 548), as amended by P.L. 1871 p. 25, which in effect gave to a married woman the right to cause her husband's life to be insured in her favor and upon his death to receive the amount of insurance free from claims of his creditors, provided the annual premium on the policy did not exceed $100. The BorlandCase decided that the statute indicated authority to a wife to procure a policy on her husband's life and pay premiums thereon out of her own funds, but that it disclosed no intention to enable a husband to set aside a portion of his property or income for his wife as against his creditors; that the statute did not apply to a life policy effected by a husband for the benefit of his wife and child and that premiums paid by him on such a policy were in the nature of gifts and fraudulent as against his creditors.
The year following that decision and probably because of it, the legislature passed P.L. 1896 p. 240 to declare the *Page 84 
rights as between an insured's creditors and his beneficiary (Lanning v. Parker, 84 N.J. Eq. 429) and that statute was incorporated as part of the Insurance act of 1902 (Comp. Stat.p. 2836) as sections 38 and 39 above quoted. The difference between the act of 1896 and the act of 1851, as amended, is marked and I cannot think that any legislative intent can be discerned in the act of 1896 to limit its operation, like the act of 1851, to the wife and children of an insured. Present section 38 is sufficiently broad to include any lawful beneficiary, while section 39 extends those special benefits to a wife and children which the Borland Case decided the act of 1851 withheld from them and the purpose of section 39 was possibly also to eliminate any common law disability which a married woman might be under with respect to the title to proceeds of life insurance. I conclude that sections 38 and 39 should not be read together, except as section 39 requires reference to section 38 to ascertain what the provision of the former section is with respect to premiums paid in fraud of creditors and that section 38 stands by itself and is entitled to construction wholly independent of section 39.
Before considering the effect of section 38 on the instant case, I should refer to complainants' contention that it applies only to one having an insurable interest in the life of the insured and that here the beneficiary has not shown affirmatively such interest in his brother's life. I do not think that the words "having an insurable interest therein" as contained in the forepart of section 38, refers to a policy effected by one on his own life. The punctuation of the section is poor but I believe that the "insurable interest" mentioned in the section can be applicable only to a policy taken out by one on the life of another in favor of a third person. However that may be, I am of the opinion that a brother, by reason of his relationship to the insured, has an insurable interest in the insured's life.Trenton Mutual Life, c., Co. v. Johnson, 24 N.J. Law 576;Rogers v. Atlantic Life Insurance Co., 135 S.C. 89;133 S.E. Rep. 215; Century Life Insurance Co. v. Custer, 178 Ark. 304;Aetna Life Insurance Co. v. France, 94 U.S. 561. *Page 85 
Nearly all reported cases on the effect of statutes more or less like sections 38 and 39, deal with the rights of a beneficiary wife as against her husband's creditors and those cases hold that the statute prevails in favor of the wife and that she is entitled to receive and hold the proceeds of policies, except to the extent of premiums paid by the insured while insolvent, or except to the extent of other exemptions fixed by particular statute. Broadly stated, the reason for the legislative policy is that only to the extent the insured's funds have been withdrawn from his estate to carry insurance, can it be said that the insurance has prejudiced creditors. Bailey v.Wood, 202 Mass. 549; Cole v. Marple, 98 Ill. 58; Smith'sAdm'x v. Milton, 171 Ky. 819; Clay County Bank v. Wilson,109 W. Va. 684. This court has said that our statute indicates a legislative purpose that the provision which a man by his life insurance had made for the support of his wife after his death, should not be wholly subordinate to the claims of creditors but only to the extent, subject to the statute of limitations, he has used his funds in payment of premiums. G.P. Farmer Coal, c.,Co. v. Albright, 90 N.J. Eq. 132. It has also been held under statutes quite similar to ours, that a child beneficiary is entitled to the protection of the statute (Lytle v. Baldinger,84 Ohio St. 1; Barbin v. Moore, 85 N.H. 362;159 Atl. Rep. 409), and also a trustee named as beneficiary for particular creditors. Teague v. Pilot Life Insurance Co., 200 N.C. 450.
 York v. Flaherty, 210 Mass. 35, holds that under a policy originally made payable to one who subsequently died and thereafter the insured designated his wife and son as beneficiaries, the transfer to the wife could not be voided by the insured's creditors but the transfer to the son could be. It appears from that case and from Bailey v. Wood, supra, that Massachusetts had a statute where the provisions of our sections 38 and 39 were combined in a single section and York v.Flaherty held that the Massachusetts statute made distinction between the right of a wife and the right of any other beneficiary and that the right of any other beneficiary was confined to policies expressed at the time of their issue to be *Page 86 
for his benefit. The fact that our legislature divided the Massachusetts law into two sections indicates to my mind a legislative intention that each section should be read separately. To apply York v. Flaherty to our section 38 would do violence to the direction of the section that the "lawful beneficiary" of a policy shall be entitled to its proceeds as against creditors of the insured. The purpose and meaning of section 38 does not seem at all doubtful. I think that it expresses the intent that any beneficiary named by the insured in exercise of the right reserved by the policy to change the one originally named, is a lawful beneficiary and as such shall have the same benefit of the statute as a beneficiary to whom the policy is made payable in the first instance. Merchants' andMiners' Transportation Co. v. Borland, supra (at p. 288);Teague v. Pilot Life Insurance Co., supra; Barbin v. Moore,supra. Being of the opinion that in the instant case, section 38 of our statute should be construed by itself, I conclude that under its provisions the rights of creditors of the insured do not extend to the entire proceeds of the policies on McCroskery's life, but are limited to a certain amount of premiums and that the beneficiary named in all three policies is entitled to the policy proceeds less the amount of premiums paid thereon since January 15th, 1929, with interest from the respective dates of payment to the date of the decree to be entered herein, and that dividends earned on the policies and applied to the payment of premiums cannot be deducted in ascertaining the sum to which creditors are entitled. If counsel cannot agree on that sum, it will be determined by the court and perhaps further evidence will be necessary for that purpose.
Because the insolvent insured paid premiums in fraud of creditors, any creditor whether prior or subsequent to such payment has a standing to seek relief. When a subsequent creditor attacks the fraudulent act, he would be required to show an actual fraudulent intent on the part of the debtor as to him, unless the existence be shown of a creditor or creditors at the time of the fraudulent act, in which case all classes of creditors are entitled to relief. Washington *Page 87 National Bank v. Beatty, 77 N.J. Eq. 252. Here the insured was indebted to several creditors in and prior to January, 1929, and even if complainant Borg, whose debt arose about a month prior to the insured's death, could have no standing to maintain this suit, his co-complainant Maley as administrator cumtestamento annexo of the insured's estate, representing all creditors, has. Schwalber v. Ehman, 62 N.J. Eq. 314; Bose v.Meury, 112 N.J. Eq. 62. Out of the amount recoverable for the insured's creditors, the complainant Borg is entitled to be paid in full because of his diligence in bringing and prosecuting this suit. Lanning v. Parker, supra. The creditor Morrison is not entitled to a preference. He gave notice of his claim to the insurance company more than a month before the bill in this suit was filed and then he rested. He was not a party to this suit until brought in by the insurance company's interpleader. Soffcke, a creditor, is not a party to the suit except as represented by the administrator cum testamento annexo. His sole claim to preference rests on his testimony that he did not press the insured for payment of his claim because of the insured's promise to him that he would be paid out of insurance which the insured said he had made payable to his estate. Even if his testimony as to transactions with the deceased is admissible, his complaisance does not entitle him to recognition superior to other creditors.