In 1928 Julius F. Kaufherr, who will hereinafter be referred to as the decedent, made his bond to complainant for the principal sum of $35,000, secured by his mortgage in that amount, encumbering vacant land in the city of Newark. In 1932 the decedent made a second bond to complainant for the unpaid balance of the loan, which unpaid balance then amounted to $26,900. Thereafter, on June 17th, 1935, a bill of complaint to foreclose the mortgage securing the payment of said balance was filed in this court. The decedent was made a party defendant in that suit and was duly served. On June 19th, 1935, a lis pendens was filed and thereafter the cause proceeded to a final decree of foreclosure, entered on September 3d 1935, adjudging that there was due to complainant the sum of $27,433 besides interest and costs.
The sheriff sold the mortgaged premises on November 19th, 1935, to complainant for $100, and no objections to confirmation being made, the sale was confirmed on November 30th, 1935. Subsequently, on February 15th, 1936, complainant commenced in the Essex county circuit court an action against the decedent to recover the resultant deficiency.
On February 28th, 1936, the decedent caused to be incorporated a company known as the Kaufherr Meadowland Realty Company (one of the defendants herein) and on March 24th, 1936, the day the company's charter was filed in the county clerk's office, Kaufherr and his wife conveyed to that company the real estate standing in his name. He died on *Page 329 
April 3d 1936, and thereafter Daniel C. Kaufherr (the petitioner herein) qualified as executor under his will. Kaufherr's death was suggested on the record and said executor was substituted as the defendant in the then pending circuit court action.
The executor then presented a petition to this court asserting that the fair value of the mortgaged premises was in excess of the amount adjudged by the foreclosure decree and praying that the order confirming sale be vacated and the property ordered resold and that complainant be enjoined from prosecuting the law action or, as an alternative, the fair value of the property be credited against the decree. On this petition an order to show cause was allowed on June 24th, 1936. Affidavits were submitted by both sides and on August 18th, 1936, upon the consent of the parties, an order was entered dismissing the said petition. The petitioner's consent to such dismissal is now explained by his counsel's affidavit that because of the complainant's resistance to the petition and upon a consideration of complainant's affidavits then filed and because it was apparent to him that inasmuch as a lis pendens had been filed in the foreclosure action and the time for appeal from the decree confirming sale had expired, the law relating to the case "would not avail to the benefit of the estate."
When the said petition, which I call the first petition for relief, was dismissed and the restraint against the law action was no longer effective, complainant proceeded to take judgment in the law action against the executor, which judgment was entered on August 28th, 1936, for $29,493.05, and this without defense or objection from the executor. Execution was issued on September 3d 1936, and returned unsatisfied.
Complainant then brought the present suit for relief and discovery. In the bill and in the affidavits attached thereto it is alleged that during the period that the decedent was indebted to complainant, as aforesaid, he secured four life insurance policies on his own life for various amounts aggregating the sum of $250,000 and that by agreement made in 1934 he subjected those policies to the operation of a trust agreement by which four trusts were created, the present beneficiaries of which are: Laura Kaufherr (the debtor's widow), *Page 330 
Daniel C. Kaufherr (the debtor's son, the petitioner herein), Vera Kaufherr (the debtor's daughter-in-law and the wife of the petitioner herein) and Jane Kaufherr (the debtor's daughter), all of whom are made defendants to the bill.
The bill and proofs further show that the debtor's brother, Albert H. Kaufherr, died on September 30th, 1935, whereupon the debtor collected $28,000 from insurance carried on the brother's life and it is charged that a portion of this sum was used by him to pay and satisfy moneys theretofore borrowed by the debtor on the policies on his own life and the balance was transferred and paid over to the defendants in the cause for the purpose of concealing such funds and placing them beyond the reach of the creditors of the decedent, Julius F. Kaufherr.
The bill also charges that the conveyance by the decedent to the Kaufherr Meadowland Realty Company of the debtor's real estate was not only voluntary and without consideration, and therefore fraudulent against creditors, but also was designed to hinder the decedent's creditors from collecting their unpaid claims. It is further charged that the premiums paid by the decedent for the aforesaid quarter of a million dollars of insurance on his own life were paid while he was indebted to complainant and other creditors and while he was insolvent and that such payments therefore were made in fraud of the decedent's creditors, of whom complainant has since March 10th, 1928, been one. It is further charged in the bill that the premiums so paid by the decedent within six years next preceding the commencement of the within suit exceed in the aggregate the amount due on complainant's said judgment.
It is further charged that in January, 1936, the decedent caused the beneficiary in three policies issued by the Mutual Life Insurance Company to be changed, substituting the defendant Laura Kaufherr as beneficiary in place of the trustees named under the aforementioned trust agreement, and that upon the death of the assured she received as the proceeds of said policies the sum of $200,000, and that the son, Daniel C. Kaufherr, as trustee under the said trust agreement received the proceeds of another policy issued by the Aetna *Page 331 
Life Insurance Company in the sum of $50,000, and that the aforementioned sum of $200,000 has been deposited with the Mutual Life Insurance Company of New York to be held under the terms of the life insurance trust agreement created by the decedent, as above stated.
The bill prays (1) that discovery be made by the defendant-executor and by the widow of the moneys received by them under the life insurance policies and that the executor disclose the premiums paid by the decedent within the six years preceding the commencement of this action and also the disposition made by the decedent of moneys collected by him under policies of insurance on the life of the decedent's brother, Albert H. Kaufherr, (2) that the defendants be decreed to pay complainant's debt, (3) that said conveyance to said Kaufherr Meadowland Realty Company be set aside as fraudulent, (4) that said lands be sold discharged of such conveyance and the proceeds applied to the payment of complainant's judgment, and (5) that it be decreed that the proceeds of the four policies carried by decedent on his own life are subject to the lien of complainant's judgment and that the defendants Daniel C. Kaufherr and Laura Kaufherr, be directed to pay out of said proceeds complainant's judgment. The bill also prays for restraint, pending this suit, against the defendants disposing of any of the property or assets mentioned in the bill.
Upon the filing of the said bill and a consideration of its allegations and the affiadvits supporting the bill this court allowed the usual order for discovery directing the executor to appear before one of its masters. Thereupon the executor presented another petition for relief, which I call the second petition, again asserting that the mortgaged premises are worth more than the amount due on complainant's judgment and now praying that the proceedings in this cause be stayed until it be determined what allowance "would be fair to set against the judgment obtained in the Essex county circuit court by the complainant against the estate of Julius F. Kaufherr" and that if it be determined that the value of the real estate is worth more than the amount of the judgment that the bill in this cause should be dismissed. On that petition *Page 332 
this court allowed an order to show cause. At the argument there was offered and the court received in evidence the record of the original foreclosure proceedings embracing, as it does, the proceedings on the defendant's first petition for relief. On the showing thus made complainant's counsel advanced three contentions, viz.: (1) that the dismissal of the first proceeding was res judicata and that the defendant-executor could not again litigate the question of fair value or again seek the same relief, (2) that in seeking such relief the defendant-executor, who stood in the shoes of the decedent, was an actor seeking affirmative relief and that because of the fraud charged in the bill the "unclean hands doctrine" applied and that therefore no relief should be afforded to those claiming under the fraud-doer, who are also the same persons seeking to retain the benefits of transfers and conveyances alleged to have been in fraud of creditors, and (3) that the defendants have the financial capacity to redeem the mortgaged premises from the foreclosure sale, such right of redemption extending under the Mortgage act to February 28th, 1937, and that therefore they were not entitled in equity to a credit for fair value.
In the light of a further development in the case, which I shall presently mention, and in the view I have taken of the matter it becomes unnecessary to pass upon and I do not decide the first and second contentions made by complainant, those involving "res judicata" and the "unclean hands doctrine." The third contention is dispositive of the defendant's claim for a credit for fair value.
Defendant's counsel has stressed the claim that the complainant is seeking a double satisfaction. We have held this to be so in those cases in which the mortgagee sought to take and hold the security and at the same time enforce the deficiency for the full or substantially the full debt, but we so held only where those liable on the bond had not the means to bid for the property at the foreclosure sale or the means wherewith to redeem the property within the six months allowed by statute for such redemption. That is not the situation here. The bill charges that the premiums alone, paid in fraud of creditors, are more than ample to satisfy complainant's *Page 333 
judgment, not to mention the insurance collected by the decedent on the life of his brother, the ultimate recipients of which insurance are the defendants in the case, and not to mention the value of the real estate alleged to have been voluntarily and fraudulently conveyed by the debtor after the commencement of the deficiency action and before the entry of the judgment therein.
The allegations of the bill and the supporting affidavits showing a financial capacity to redeem the property are not denied by the petitioner. His sole insistence seems to be that the mortgagee must retain the property without the right to enforce its judgment while the defendants may retain all of the quarter of a million dollars on the policies carried by the decedent and may retain the $28,000 collected by him upon his brother's death as well as the real estate conveyed by the debtor while the suit at law was pending against him, and all of this without the defendants availing themselves of the opportunity given by statute of redeeming the property within six months from the date of the entry of judgment (chapter 88, laws of 1935) upon payment of the mortgage debt and the other items provided for in the statute. That position does not appeal and cannot be tolerated; it offends against every instinct of fair dealing. I have yet to be shown a single instance where with the financial capacity to pay the debt clearly present the obligor was permitted to unload upon an unwilling mortgagee the land and for himself keep the cash. On the contrary we said in Maher v.Usbe Building and Loan Association, 116 N.J. Eq. 475, that the equity enforced in Federal Title and Mortgage Guaranty Co. v.Lowenstein, 113 N.J. Eq. 200, may be invoked only by the distressed. We there further said that "the disappointed but affluent mortgagor may not take advantage of a rule designed to relieve distress during an emergency to avoid payment of his debt and unload his unprofitable land upon an unwilling mortgagee who is as much entitled to the protection of this court as is the mortgagor." To the same effect is Young v. Weber, 117 N.J. Eq. 242,
in which the opinion of Vice-Chancellor Berry was expressly concurred in by the chancellor and all his vice-chancellors. *Page 334 
However, in considering this case I am not confined to the circumstance that under the law the property may be redeemed at any time prior to February 28th, 1937. The complainant in this case seeks no double satisfaction. In the brief filed by its counsel appears the following offer: "Complainant disclaims any intention of seeking double satisfaction. It here and now tenders itself ready to convey the mortgaged premises to the petitioner herein or the beneficiary of the insurance fund or the grantee in the voluntary conveyance, upon payment to it [complainant] of its decree, interest, costs, taxes and expenses of its litigation at the circuit and in this court."
By that tender complainant offered to do full equity. The offer possesses the virtue of making both parties to the obligation whole, for upon its acceptance the property is restored to those who pay the debt and there is furnished to the creditor payment of no more than what is justly due it.
I am not unmindful that under section 38 of our Insurance act (2 Comp. Stat. 1910 p. 2850) the designated beneficiary of a life insurance policy, other than the assured or his legal representatives, is entitled to its proceeds, against the creditors of the assured, but this preference and exemption is by the very same section qualified by the provision that "subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their [creditors'] benefit from the proceeds of the policy * * *." See Borg v. McCroskery, 120 N.J. Eq. 80,
and cases there cited. In that splendidly considered case Vice-Chancellor Fielder held that because the insolvent assured paid premiums in fraud of creditors, any creditor, whether prior or subsequent to such payment, was entitled to relief. In the case at bar it is alleged that all of the insurance premiums paid by the decedent were paid while he was indebted to complainant and to others and while he was insolvent. The instant case is well within the holding of the cited case. The theory upon which such premiums may be reached in equity is that the proceeds of the life insurance policies are, to the extent of such premiums, a trust fund for the benefit of the creditors of the assured. *Page 335 
The petitioner's appeal is addressed to this court's discretion. It need not be granted if it does not satisfy the conscience. As was said by Vice-Chancellor Berry very recently in dealing with an obligor's effort to secure a credit for fair value against a deficiency judgment: "There is no doubt of the inherent jurisdiction of this court to give relief in matters of this kind if the circumstances justify it, but that jurisdiction is entirely discretionary, as is all of this court's inherent jurisdiction. The chancellor may exercise it or not, according as the prayer of the bill appeals to his conscience." See Miller
v. Bond and Mortgage Guaranty Co., 121 N.J. Eq. 197 (at p.199).
Complainant may amend its bill by incorporating therein the offer made by it above mentioned. The defendant-petitioner will be given twenty days from the date of the filing of such amendment within which he may accept the offer and make payment. During those twenty days further proceedings in this cause will be stayed. An order may now be presented expressing the foregoing directions and dismissing the defendant's petition, with costs.