On the morning of January 24th, 1936, Daniel D. Loeb was found dead in his automobile in a closed single car garage he had rented the preceding day. Carbon monoxide gas from the exhaust of his motor was the cause of death. He left ten policies of insurance on his life for a total face value of $25,000, all payable to his wife, the defendant Fay M. Loeb, and by his probated will he gave her all his estate and named her sole executrix. Eight of said policies as issued, and at all times, were payable to said defendant as beneficiary. Two others were originally payable to the insured's estate but upon his direction to the insurers, the beneficiary under those two policies was changed to his wife. This suit was brought by complainant, Max Goren, for his own benefit, as a creditor of Loeb and for the benefit of other creditors, to recover premiums paid on the ten policies between April 9th, 1930, and January 24th, 1936, on the ground that throughout said period Loeb was insolvent and further, to recover the full proceeds of the two policies whereon Loeb effected change of beneficiary, on the ground that he made such change with intent to defraud his creditors by depriving them of the proceeds of said two policies. Goren's claim is for $2,125 and eight other creditors have been admitted to intervene with claims aggregating $44,830.37. They will all be referred to hereinafter as complainants. Two *Page 337 
insurance companies named as defendants in the bill, have made discovery as prayed for and complainants seek no further relief against them. Mrs. Loeb being the only defendant against whom affirmative relief is now sought, will be referred to hereinafter as the defendant.
At the outset the defendant contends that complainants are not entitled to maintain this suit because they did not present their claims to her as executrix; because they have not established their claims by judgment and because they have not shown a lien on the assets they seek to recover.
Complainants' claim to premiums paid during Loeb's insolvency is based on our Insurance act in effect at the time the bill was filed, being Comp. Stat. p. 2850 §§ 38, 39 (now Rev. Stat.17:34-28, 29), which sections read as follows:
"38. When a policy of insurance is effected by any person on his own life, * * * the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; and the person to whom a policy of life insurance is made payable may maintain an action thereon in his own name; provided, that, subject to statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors.
"39. Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman * * * whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit, * * * according to the terms and provisions of the policy or assignment, subject to the above provisions relating to premiums paid in fraud of creditors."
These sections do not limit the right of recovery to judgment creditors and they give creditors a lien on the proceeds of policies to the extent of premiums paid in fraud of creditors. Any creditor may require the insurer to withhold the amount of such premium from the policy proceeds, merely *Page 338 
by giving notice to the insurer before payment. Since in cases of undisputed policy claims the insurer usually makes prompt payment to the beneficiary and there is no time for a creditor to reduce his claim to judgment before serving notice, it is the clear intent of the statute that any person who claims to be a creditor is entitled to the benefit of the act, if he can establish his status to the satisfaction of the court in case his claim is controverted by the beneficiary. Here the insurers paid the proceeds of eight policies to the defendant within three weeks after Loeb's death, before complainants had time to ascertain what insurance Loeb carried and notify the insurance carriers of their claims. After defendant had received the insurance proceeds, it would have been futile for complainants to have presented sworn claims to her as executrix and awaited her determination thereon before proceeding to prove their claims by action at law, and before bringing this suit. The ensuing delay might also affect the extent of complainants' recovery of premiums, since under the statute the right to recover is limited to premiums paid within six years prior to commencement of suit therefor.
The defendant denies complainants' right to recover said premiums and she asserts personal claim to the entire proceeds of the policies; it is apparent therefore that had the claims been presented to her and had she acted on them, she would have rejected them. The complainants made proof of their debts in this proceeding and defendant made no attempt to dispute any of said claims. Suit at law against defendant as executrix, resulting in judgment, would only establish complainants' debts and would not give them a lien on the assets in question. In this single action they can establish their status as creditors and have it decreed that such assets came to defendant's hands fraudulently and for that reason should be applied in satisfaction of their debts.Shurts v. Howell, 30 N.J. Eq. 418; affirmed, 31 N.J. Eq. 796;First National Bank, c., v. White, 60 N.J. Eq. 487. Defendant admitted the validity of claims of at least three complainants and a judgment has been recovered against her, as executrix, by another. Those four complainants had an undoubted *Page 339 
right to prosecute an action to recover assets fraudulently held by defendant and this being a class bill, that right extends to all other complainants. I conclude that the word "creditor" as used in the act, should be given its generally accepted meaning and should not be held to mean "judgment creditor" and that it was not necessary for complainants to present their claims to defendant before bringing this suit. New Jersey Insurance Co.
v. Meeker, 37 N.J. Law 282, 300; Merchants, c., Co. v.Borland, 53 N.J. Eq. 282, 296.
Complainants are entitled to have all premiums paid by Loeb during the period of his insolvency on the policies on which defendant has received the proceeds, with interest, applied to the payment of their claims subject, in the words of the quoted act, "to statute of limitation." Comp. Stat. p. 2850 §§ 38, 39;Borg v. McCroskery, 120 N.J. Eq. 80, and cases there cited. The period for recovery is limited by our statute of limitation to six years. It is admitted on behalf of defendant that Loeb was insolvent from April 9th, 1930 (six years prior to the commencement of this action), to the date of his death and it is for premiums paid during that period that complainants may recover, and the extent of such recovery is not only premiums paid in cash but also premiums paid by the application of dividends declared on the policies and those paid by means of loans to Loeb made on the policies by the insurers. Borg v.McCroskery, supra.
Of the ten policies in force at Loeb's death, defendant has received the proceeds of eight. Two policies issued by Prudential Insurance Company are in litigation in another suit and defendant has received nothing from those policies. In computing the amount applicable to complainants' claims, only premiums paid after April 9th, 1930, on said eight policies can be considered and all of those premiums, except four, were paid by Loeb. Of those exceptions, two payments for a total of $435.88 were made by defendant and the other two, for a total of $126.40, were paid by James A. Mason at Loeb's request. The theory of our legislation making premiums paid by an insolvent debtor liable to his creditors, is that only to the extent the insured's funds have been withdrawn *Page 340 
from his estate to carry insurance, can it be said that the payment of premiums has prejudiced creditors. The defendant was not reimbursed for the payments made by her and the two premium amounts paid by Mason were, in effect, borrowed by Loeb from Mason and had not been repaid up to Loeb's death. After Loeb's death Mason presented his claim for such payments to defendant and she paid it, so that she may be said to have made such premium payments herself. The total of the four exceptions, $562.28, did not deplete Loeb's estate and should be deducted from the amount of premiums found to have been paid while Loeb was insolvent on the eight policies in question, and the balance with interest at six per cent., is the sum available for application to the payment of complainants' claims. If the parties can not agree on the amount, I shall refer it to a master for ascertainment.
Complainants further contend they are entitled to recover the full proceeds of a $25,000 Metropolitan Life Insurance Company policy and a $5,000 Equitable Life Insurance Company of Iowa policy, being among the eight policies paid to defendant. Both policies had been in force many years and had always been payable to Loeb's estate until, at his request made about ten days prior to his death, the beneficiary under both policies was changed from his estate to defendant. Complainants charge that Loeb made such change with intent to commit suicide after placing the proceeds of the policies beyond the reach of his creditors; that he did commit suicide and by the change of beneficiary, made without consideration and while he was insolvent, he effected a transfer of property in fraud of complainants who, as creditors, otherwise would have been entitled to receive the proceeds of the policies.
It is my opinion that general rules of law applicable to the transfer of property by insolvent debtors, do not apply here. The insured was a resident of this state, the proceeds of the policies were paid to a resident beneficiary, all parties concerned in such proceeds are domiciled here and the statute I have quoted is a legislative declaration fixing the rights as between beneficiaries and creditors in the proceeds of life *Page 341 
insurance policies and exempts such proceeds from attack by creditors of the insured, by limiting inquiry as to fraudulent transfer of assets to the amount of premiums paid on policies. It is therefore not necessary to determine whether Loeb committed suicide, or whether when he caused change in beneficiary to be made, he intended through self-destruction, to divert the proceeds of the two policies from his creditors. Regardless of the conclusion courts of other jurisdictions have reached on the contention of complainants, based on the common law or upon their statutes, I consider it settled by our courts that our legislature has stated, in effect, that the provision a man makes by life insurance for his wife after his death, whether she was named originally in his policy of insurance as beneficiary, or the policy thereafter was made payable to her through change of beneficiary, is not subject to question or attack by his creditors, except to the extent, and subject to our statute of limitation he has used his funds to pay premiums while insolvent. Such I find to be the intent of section 38, while section 39
expressly extends the benefits I have named to a married woman.Borg v. McCroskery, supra, and cases there cited.
Defendant claims to have paid to Loeb's creditors other than complainants, upward of $30,000 from the proceeds received by her from the eight policies and she contends that because that sum greatly exceeds any amount recoverable for premiums paid in fraud of creditors, she should not be called upon to account to complainants for any premiums. When she paid certain creditors she knew Loeb's estate was insolvent and that there were creditors other than those she paid. The creditors paid by her stood in no better position than complainants and the payments defendant made were out of a fund she always asserted belonged to her and were wholly voluntary. She certainly was not entitled to apply the entire premium fund to satisfy the debts of creditors she preferred and leave nothing for complainants. I find no merit in her contention, but as to payments she made to bona fide
creditors protected by the statute, I think that in equity she should be subrogated to their rights and receive allowance for such payments, pro rata with complainants. *Page 342 
Defendant concedes that payments she made to Silverman, Temple Beth-El and Dr. Thorner did not satisfy obligations owed by Loeb and that she is not entitled to reimbursement for any part of those payments; also that she should not be reimbursed for the payment to Mason since that claim was for premiums paid on Loeb's behalf, which I have said should be deducted from the total of premiums paid.
Complainants dispute the claims defendant paid to Fifth Street Synagogue and Wein Wein. The former claim was for a burial plot purchased after Loeb's death, wherein his body was interred and the latter was for Loeb's funeral expenses incurred on defendant's order. Those two claims, arising for burial expenses after Loeb's death, are properly chargeable against his general estate and not against premiums paid in fraud of creditors existing prior to his death. They will be disallowed.
Complainants also question defendant's right to reimbursement for $4,423.86 paid New Jersey Title Guarantee and Trust Company. The facts are that in 1931 William Robertson had endorsed Loeb's promissory note discounted by said trust company for a loan made to Loeb and Robertson held as security for his endorsement, an assignment of one of the policies whereon Loeb subsequently changed the beneficiary to defendant. In paying this policy the insurer drew two checks to defendant's order, one for $4,423.86, which she endorsed to Robertson and he paid Loeb's note and the other for $18,178.37 which defendant received as the amount due her on the policy. It is as though Loeb had carved out a definite part of the proceeds of the policy for Robertson and sometime thereafter had transferred the remainder, by change of beneficiary, to defendant. Thus Robertson, as assignee of the policy, had rights in the proceeds of the policy superior to defendant and he had to look to the policy, and not to the premium fund, for payment. All defendant was entitled to have was the balance remaining due on the policy after Loeb's debt to Robertson or the trust company was satisfied. She paid nothing to the endorser or holder of Loeb's note and therefore has no standing to share with complainants for any part of such payment. *Page 343 
Complainants also question defendant's payments to Dr. Lipschutz, Addie Pines, Nathan Feldman and Anne Lipschutz, all relatives of defendant, but I think their position as creditors of Loeb and the amounts paid them were sufficiently proven and defendant will be entitled to share for those amounts with complainants in the premium fund, as well as for payments to all other creditors I have not mentioned and who, the evidence shows, she paid.
Complainants question the propriety of several payments made by defendant to Loeb's creditors, on the ground that their debts were incurred shortly before Loeb's death and therefore premiums paid by Loeb prior to incurring those debts could not have been in fraud of such creditors and they can share only in premiums paid after their debts were incurred. The same argument might be addressed to claims of some complainants but I do not find it meritorious. When a subsequent creditor attacks payment of premiums, he might be required to show an actual fraudulent intent on the part of the debtor toward him, but since debts to some of Loeb's creditors who will be paid out of the premium fund, were incurred prior to the commencement of Loeb's insolvency, the fraudulent intent existed from the beginning of the insolvency and all classes of creditors are entitled to share equally in the entire premium fund.
Out of the amount recoverable for Loeb's creditors of premiums paid on the eight policies on his life, the complainant Max Goren must be paid in full because of his diligence in bringing and prosecuting this suit. In the balance remaining, the complainants will share pro rata with defendant to the extent of creditors' claims paid by defendant and herein allowed. A decree will be entered in conformity with the conclusions I have stated. *Page 344